*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  February 23, 2017          522936
                                                 522939
_____

In the Matter of W.M. SCHULTZ
    CONSTRUCTION, INC., et al.,
                    Petitioners,
        v                                MEMORANDUM AND JUDGMENT

MARIO J. MUSOLINO, as Acting
    Commissioner of Labor,
                      Respondent.

(And Another Related Proceeding.)
_____

Calendar Date:  January 18, 2017

Before:  McCarthy, J.P., Garry, Lynch, Devine and Mulvey, JJ.

_____

        Ernstrom & Dreste, LLP, Rochester (John W. Dreste of
counsel), for W.M. Schultz Construction, Inc., petitioner.

        Couch White, LLP, Albany (Harold D. Gordon of counsel), for
William M. Schultz, petitioner.

        Eric T. Schneiderman, Attorney General, New York City (Seth
Kupferberg of counsel), for respondent.

        Adams Bell Adams, PC, Rochester (Anthony J. Adams Jr. of
counsel), for Empire Chapter of Associated Builders and
Contractors, Inc., amicus curiae.

_____

McCarthy, J.P.

Proceedings pursuant to CPLR article 78 (initiated in this Court pursuant to Labor Law §§ 220 and 220-b) to review a determination of respondent finding that petitioners failed to pay prevailing wages and supplements.

The New York Racing Association (hereinafter NYRA) is a not-for-profit corporation, incorporated September 12, 2008. NYRA is both the lessee of state-owned racetracks and their facilities, including Saratoga Race Course, and a franchisee tasked with continuing racing and racing operations at those racetracks. In April 2009, NYRA entered into a contract with petitioner W.M. Schultz Construction, Inc. (hereinafter Schultz Construction) requiring Schultz Construction to perform construction relating to a concentrated animal feeding operation in the stable area of the Saratoga Race Course (hereinafter the project), which included constructing horse showers and a drainage control system. In November 2009, at the conclusion of the project, the Department of Labor issued a notice in response to a labor union inquiry that construction, maintenance and repair work at NYRA would be subject to the prevailing wage laws. In October 2014, after receiving complaints that Schultz Construction was violating the prevailing wage laws by underpaying workers for the project, respondent commenced an investigation of the matter and ultimately issued a notice of hearing and scheduled enforcement proceedings. In lieu of live hearing testimony, the parties agreed to proceed on stipulated facts and that the hearing would address the applicability of Labor Law article 8. In March 2016, a Hearing Officer issued a report and recommendation, adopted by respondent, which found that the contract between NYRA and Schultz Construction for the project was subject to prevailing wage laws. Thereafter, Schultz Construction and petitioner William M. Schultz separately commenced CPLR article 78 proceedings in this Court (see Labor Law §§ 220, 220-b) seeking to annul respondent's determination.

We annul. Labor Law § 220 provides that "[t]he wages to be paid for a legal day's work . . . to laborers, work[ers] or mechanics upon . . . public works, shall be not less than the

prevailing rate of wages" (Labor Law 220 § [3] [a]), defined as the rate paid to "workers, laborers or mechanics in the same trade or occupation in the locality where the work is being performed" (Labor Law § 220 [5]). The NY Constitution further provides that "[n]o laborer, worker or mechanic, in the employ of a contractor or sub-contractor engaged in the performance of any public work, shall . . . be paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used" (NY Const, art I, § 17). The Court of Appeals has recently clarified the meaning of a public work: "[f]irst, a public agency must be a party to a contract involving the employment of laborers, workers, or mechanics. Second, the contract must concern a project that primarily involves construction-like labor and is paid for by public funds. Third, the primary objective or function of the work product must be the use or other benefit of the general public" (De La Cruz v Caddell Dry Dock & Repair Co., Inc., 21 NY3d 530, 538 [2013]).

This Court's "review of an administrative determination made after a hearing required by law, and at which evidence is taken, is limited to whether that determination is supported by substantial evidence" (Matter of Scuderi v Gardner, 103 AD3d 645, 646 [2013]; see e.g. Matter of Nash v New York State Dept. of Labor, 34 AD3d 905, 906 [2006], lv denied 8 NY3d 803 [2007]). "Substantial evidence 'means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact'" (Matter of R.I., Inc. v New York State Dept. of Labor, 72 AD3d 1098, 1098 [2010], lv denied 17 NY3d 703 [2011], quoting 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 179 [1978]).

Substantial evidence does not support the conclusion that the project was paid for by public funds. As respondent conceded in his determination, NYRA's financial statements establish that they received no funds from the state prior to or during the term

of the contract for the project.[1]  Moreover, the only evidence in
the record of the provision of funding by the state relates to a
transfer of funds from the state to NYRA's predecessor, also
known as the New York Racing Association, Inc. (hereinafter Old
NYRA), which, at the time of the project, no longer had an
interest in Saratoga Race Course and was not a party to the
contract for the project.[2]  The transfer of funds from the state
to Old NYRA was pursuant to a settlement agreement, dated
September 12, 2008, that had been entered into by Old NYRA, NYRA,
the state, the New York State Non-Profit Racing Association
Oversight Board and the New York State Division of the Lottery.
Under the settlement agreement and as between Old NYRA and the
state, Old NYRA conveyed to the state its title and interest in
three racetracks, including the Saratoga Race Course, as well as
all improvements and appurtenant physical assets.  In return, the
state paid Old NYRA $105 million "for services and expenses
required relating to payments for capital works or purposes."
The record also establishes that, in November 2008, Old NYRA made
a $5 million transfer to NYRA.  Notably, even assuming that the
$105 million transfer from the state was the source of the
subsequent $5 million transfer from Old NYRA to NYRA, the record
is bereft of any evidence that NYRA had any obligations as to
spending such funds on capital works projects, as did Old NYRA.[3]

---

[1]  We find no support for respondent's apparent conclusion
that the De La Cruz test is satisfied upon a finding that an
entity could have acquired public funds to pay for a project or
that public funding for a project was contemplated — regardless
of whether the entity actually acquired and then used public
funds for a project — and therefore we do not assess the accuracy
of respondent's conclusions in that regard.

[2]  NYRA was formed near the conclusion of the chapter 11
bankruptcy of Old NYRA.

[3]  Although there is no actual explanation in the record as
to why Old NYRA transferred funds to NYRA, there is a provision
in the settlement agreement that contemplates Old NYRA
potentially transferring funds to NYRA pursuant to Old NYRA's

More specifically, there is no evidence that the state had any role in the $5 million transfer, that it had any expectations as to that transfer or that the transferred funds were in any way earmarked for NYRA's use for capital works projects. Therefore there is no basis to conclude that the funds retained any public characteristic (see generally Matter of New York Charter School Assn., Inc. v DiNapoli, 13 NY3d 120, 133 [2009]).

Moreover, even if we assumed that the funds could retain a public characteristic after being transferred from Old NYRA to NYRA absent any obligation on NYRA's part as to the use of the funds, it is not a reasonable inference that the funds that NYRA used for the project can be traced back to a public source, here the $105 million the state transferred to Old NYRA. In 2008, the year that NYRA received the $5 million transfer from Old NYRA, NYRA expended $78,173,000 when including statutory commissions, and it generated $65,110,000 in racing-related revenue. At the end of that year, NYRA had $21,000,000 in cash or cash equivalent. During 2009, the year in which the project was commenced and completed, NYRA expended $276,179,000 when including statutory commissions and earned approximately $267,265,000 in racing-related revenues.[4] Considering the foregoing, the inference that the approximately $1.6 million in funds that NYRA paid Schultz Construction for the project over the course of July 2009 to February 2010 were derived from the funds that the state transferred to Old NYRA in 2008 is not

---

obligations to sell certain specified ancillary properties. However, that provision mandates that any such transferred funds would be used by NYRA for certain enumerated purposes, one of which was "operating expenses." A capital works project was not an enumerated purpose for which such funds were permitted to be used.

[4]  Thus, NYRA's racing-related revenue in 2008 was approximately 13 times greater than the funds transferred from Old NYRA, and NYRA's racing-related revenue in 2009 was approximately 53 times greater than the funds transferred from Old NYRA.

reasonable.  As the use of public funds for a project is a prerequisite to the finding that a contract relates to a public work subject to prevailing wage obligations (see De La Cruz v Caddell Dry Dock & Repair Co., Inc., 21 NY3d at 538), respondent's determination must be annulled.  Given this conclusion, petitioners' remaining contentions as to additional reasons that the determination should be annulled are academic.

Garry, Lynch, Devine and Mulvey, JJ., concur.


ADJUDGED that the determination is annulled, without costs, and petitions granted.




ENTER:

Robert D. Mayberger
Clerk of the Court